[Cite as *State ex rel. Thelen v. State Emp. Relations Bd.*, 2025-Ohio-2239.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Ryan Thelen, | : | |
| Relator-Appellant, | : | |
| | : | No. 24AP-283 |
| v. | : | (C.P.C. No. 23CV-4999) |
| State Employment Relations Board, | : | (REGULAR CALENDAR) |
| Respondent-Appellee. | : | |

D E C I S I O N

Rendered on June 26, 2025

**On brief:** *Ryan Thelen*, pro se. **Argued:** *Ryan Thelen.*

**On brief:** *Dave Yost*, Attorney General, and *Sherry M. Phillips*, for appellee. **Argued:** *Sherry M. Phillips.*

APPEAL from the Franklin County Court of Common Pleas

LELAND, J.

{¶ 1} Relator-appellant, Ryan Thelen, appeals from a judgment of the Franklin County Court of Common Pleas denying his request for a writ of mandamus ordering respondent-appellee, State Employment Relations Board ("SERB"), to find probable cause to believe an unfair labor practice occurred.

**I. Facts and Procedural History**

{¶ 2} The following background facts are taken primarily from the trial court's decision denying appellant's request for a writ, as well as from the record of proceedings. Appellant is a member of the "Cincinnati Federation of Teachers Union" ("union"); the union is "the exclusive bargaining representative for a bargaining unit of employees comprised of teachers employed with the Cincinnati Public School District" ("district").

(Apr. 23, 2024 Decision at 1.)  The union and district entered into a collective bargaining agreement ("CBA") providing for "binding arbitration of grievances."  (Decision at 1.)

{¶ 3}  During the 2017-2018 school year, appellant was a "full-time history teacher at Dater High School within the District."  (Decision at 2.)  In February 2018, appellant applied for a part-time seventh grade social studies position at Walnut Hills High School ("Walnut Hills").  The interview committee was comprised of "five teachers, and the principal's designee, Assistant Principal Joseph Stewart."  (Decision at 2.)  Appellant was not selected for the seventh grade position.  According to the CBA, "the selection of a candidate for hire requires the agreement of the principal's designee (Mr. Stewart) and a majority of the teachers on the interview committee."  (Decision at 2.)

{¶ 4}  On April 4, 2018, appellant filed, through the union, a grievance with the district "regarding its failure to hire him for the Seventh Grade Position."  (Decision at 2.)  While the grievance was in process, but before it went to arbitration, "the Seventh Grade Position was converted to a full-time position and the District hired another teacher for the Seventh Grade Position."  (Decision at 2.)  In addition, a full-time eighth grade social studies teaching position at Walnut Hills became available over the summer, and the union requested that the district place appellant "in the newly vacant Eighth Grade Position as a compromise to resolve [appellant's] grievance, but the District refused and ultimately hired another teacher for the Eighth Grade Position."  (Decision at 2.)

{¶ 5}  On August 23, 2018, arbitration was held on appellant's grievance regarding the seventh grade position, and the arbitrator awarded appellant a part-time social studies position at Walnut Hills; the award "did not specify that a specific position was to be awarded, just that a part-time social studies position at the specified school was to be awarded."  (Decision at 3.)  On September 4, 2018, appellant transferred to Walnut Hills as a part-time teacher, "and then requested that his position be increased to full-time by assigning him to monitor two study hall periods."  (Decision at 3.)  Appellant's "request to be increased to a full-time status was denied, and another part-time teacher was ultimately assigned to monitor the two study hall periods and an additional teacher was also hired to monitor other available study hall periods."  (Decision at 3.)

{¶ 6}  Beginning on September 19, 2018, Joseph Stewart (hereafter "Stewart"), the assistant principal of Walnut Hills, who "was a part of the interview committee and named

in [appellant's] initial grievance, exchanged a series of emails with [appellant] instructing him to meet with the other seventh grade teachers on his social studies team." (Decision at 3.) On September 26, 2018, Stewart stopped by appellant's classroom "to observe [appellant] teaching, and the following day Walnut Hills High School Principal, John Chambers, also stopped by [appellant's] classroom to observe [appellant] teaching." (Decision at 3.)

{¶ 7} On October 22, 2018, appellant (without union participation) filed an unfair labor practice ("ULP") charge against the district, alleging it "retaliated against him in response to his filing a grievance by (1) thwarting his efforts to obtain a full-time course load; (2) making requests that he meet with other teachers when similar requests were not made to other teachers; and (3) by coming into his classroom to observe him teaching." (Decision at 3-4.)

{¶ 8} On February 25, 2019, "after receiving responses and evidence from both parties," a SERB investigator "issued an Investigator's Memorandum recommending that [appellant's] charge be dismissed for lack of probable cause to believe that an unfair labor practice had been committed by the District." (Decision at 4.) On March 14, 2019, SERB dismissed appellant's ULP charge "for lack of probable cause to believe the statute had been violated." (Decision at 4.) Finding the district complied with the arbitration decision, SERB further determined appellant "failed to demonstrate that adverse action was taken against him" by the district, and that he "failed to show a nexus between the filing of the grievance and him not being selected for the full-time position." (Decision at 4.) Appellant filed a motion for reconsideration, which SERB denied.

{¶ 9} On August 12, 2019, appellant "was returned to full-time status and given a full-time position at Walnut Hills High School for the 2019-2020 school year." (Decision at 4.) On August 14, 2019, appellant filed a complaint in the Hamilton County Court of Common Pleas, "seeking a writ of mandamus directing SERB to investigate the ULP charge and to conduct a hearing on the merits of the ULP charge as allegedly required by R.C. 4117.02." (Decision at 4.)

{¶ 10} On October 7, 2021, the trial court denied appellant's request for a writ of mandamus, and appellant appealed that decision. On August 19, 2022, the First District Court of Appeals, in *State ex rel. Thelen v. State Emp. Relations Bd.*, 2022-Ohio-2883 (1st

Dist.), reversed the decision of the trial court, holding the court erred in denying the requested writ on the basis that the ULP charge had been determined by the arbitrator (i.e., given that the arbitration proceeding was limited to determining the merits of the grievance and did not concern the ULP charge). The appellate court remanded the matter to the trial court "with instructions to issue a writ of mandamus compelling SERB to investigate the merits of Thelen's retaliation claim." *Id*. at ¶ 29.

{¶ 11} On December 1, 2022, in accordance with the ruling of the First District, SERB "vacated its previous directive and reopened its investigation." (Decision at 5.) On February 3, 2023, "after receiving additional evidence and responses from both parties, a different SERB Investigator issued another Investigator's Memorandum, which again recommended that [appellant's] ULP charge be dismissed for lack of probable cause to believe that an unfair labor practice had been committed by the District." (Decision at 5.)

{¶ 12} On February 17, 2023, SERB "dismissed the ULP charge with prejudice for lack of probable cause to believe that the District violated R.C. 4117.11(A)(3)." (Decision at 5.) SERB found "no causal connection to show that [appellant] was not offered the eighth grade position due to his grievance." (SERB Dismissal Order at 1.) SERB further found appellant failed to show the district "took an adverse action against him, as it had complied with the arbitration decision and offered [appellant] a full-time teaching position two days before he filed his Complaint for a writ of mandamus in the Court of Common Pleas." (Decision at 5.) SERB also concluded that "Stewart's emails and classroom observation did not support [appellant's] ULP charge, as it was found that there were not sufficient facts to believe these actions were based on anti-union animus." (Decision at 5-6.)

{¶ 13} On March 1, 2023, appellant filed a motion for reconsideration. In support of his motion, appellant attached a letter, dated March 1, 2023, from Samantha Bramlage. On April 4, 2023, appellant filed a supplement to his motion which included additional materials, including copies of emails, several letters, and a newspaper article.

{¶ 14} On March 24, 2023, the labor relations specialist who conducted the investigation filed an Investigator's Memorandum on Reconsideration, recommending that SERB deny the motion for reconsideration. On April 13, 2023, SERB issued an order denying the motion for reconsideration.

{¶ 15} On April 26, 2023, appellant filed a second complaint in the Hamilton County Court of Common Pleas, "again seeking a writ of mandamus directing SERB to 'conduct a proper investigation of his [ULP charge],' and 'to conduct a hearing to consider [the ULP charge] on its merits.' " (Decision at 6.) On May 31, 2023, after SERB filed its answer, the Hamilton County Court of Common Pleas transferred the case to the Franklin County Court of Common Pleas for lack of proper venue.

{¶ 16} The matter was submitted to the trial court based on the briefing of the parties and the stipulated record of proceedings before SERB. On April 23, 2024, the trial court issued its decision and entry denying appellant's request for a writ of mandamus, finding SERB did not abuse its discretion in recommending and/or dismissing appellant's ULP charge against the district. In its decision, the court concluded appellant "did not show probable cause that an unfair labor practice was committed," and therefore appellant had "no legal right to the relief . . . requested" and SERB was under "no duty to perform any further investigation on [appellant's] ULP charge or to hold a hearing on [appellant's] ULP charge." (Decision at 17-18.)

## II. Assignment of Error

{¶ 17} Appellant appeals and assigns the following single assignment of error for our review:

> The trial court erred to the prejudice of appellant in denying his request for a writ compelling SERB to conduct a reasonable investigation of his unfair labor practice charge.

## III. Analysis

{¶ 18} Under his single assignment of error, appellant asserts the trial court erred in denying his request for a writ of mandamus. Specifically, in his pro se brief, appellant argues the trial court (and SERB) erred in (1) viewing appellant's evidence through the lens of a contract (i.e., the CBA) instead of under R.C. Chapter 4117; (2) "hiding what they believe" to be the true reasons for the decision to reject him for an eighth grade and two study hall teaching positions (Appellant's Brief at 17); (3) quoting, but not discussing, the contents of appellant's witness affidavits; and (4) failing to conduct a reasonable examination of the "points of error" cited in his motion for reconsideration (Appellant's Brief at 21).

{¶ 19} In order to "be entitled to a writ of mandamus, a party must demonstrate, by clear and convincing evidence, (1) a clear legal right to the requested relief, (2) a corresponding clear legal duty on the part of the respondent to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Teamsters Local Union No. 284 v. State Emp. Relations Bd.*, 2021-Ohio-3318, ¶ 11 (10th Dist.), citing *State ex rel. New Wen, Inc. v. Marchbanks*, 2020-Ohio-63, ¶ 15, citing *State ex rel. Mars Urban Solutions, L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 2018-Ohio-4668, ¶ 6.

{¶ 20} Under Ohio law, "R.C. Chapter 4117 governs collective bargaining for public employees." *State ex rel. Internatl. Union, Local 20 v. State Emp. Relations Bd.*, 2023-Ohio-1253, ¶ 14 (10th Dist.). Pursuant to R.C. 4117.12(A), "[w]hoever violates section 4117.11 of the Revised Code is guilty of an unfair labor practice remediable by the state employment relations board." R.C. 4117.12(B) states in part: "When anyone files a charge with the board alleging that an unfair labor practice has been committed, the board or its designated agent shall investigate the charge. If the board has probable cause for believing that a violation has occurred, the board shall issue a complaint and shall conduct a hearing concerning the charge."

{¶ 21} The Supreme Court of Ohio has noted that "[p]robable-cause determinations by SERB under R.C. 4117.12(B) are not reviewable by direct appeal." *State ex rel. Portage Lakes Edn. Assn. v. State Emp. Relations Bd.*, 2002-Ohio-2839, ¶ 35, citing *Ohio Assn. of Pub. School Emps., Chapter 643, AFSCME/AFL-CIO v. Dayton City School Dist. Bd. of Edn.*, 59 Ohio St.3d 159 (1991), syllabus. Rather, "in the absence of an adequate remedy in the ordinary course of law, 'an action in mandamus is the appropriate remedy to obtain judicial review of orders by the State Employment Relations Board [ ] dismissing unfair labor practice charges for lack of probable cause.' " *Id.*, quoting *State ex rel. Serv. Emps. Internatl. Union, Dist. 925 v. State Emp. Relations Bd.*, 81 Ohio St.3d 173 (1998), syllabus. Accordingly, "[m]andamus will issue to correct an abuse of discretion by SERB in dismissing unfair labor practice charges." *Id.*, citing *State ex rel. Leigh v. State Emp. Relations Bd.*, 76 Ohio St.3d 143, 145 (1996).

{¶ 22} The role of an appellate court " '[i]n reviewing an order of an administrative agency . . . is more limited than that of a trial court reviewing the same order.' " *State ex rel. Internatl. Union, Local 20* at ¶ 16, quoting *Lorain City School Dist. Bd. of Edn. v. State*

*Emp. Relations Bd.*, 40 Ohio St.3d 257, 260-61 (1988). In this respect, "[w]hile the trial court must examine the evidence, '[s]uch is not the charge of the appellate court,' " which "[i]nstead . . . determines only whether the trial court has abused its discretion." *Id.*, quoting *Lorain City School Dist. Bd. of Edn.* at 261. However, as to "purely legal questions, . . . this court exercises plenary review." *Id.*, citing *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶ 23} The Supreme Court has observed that " '[p]robable cause' is not defined in R.C. Chapter 4117, so it must be accorded its ordinary definition." *State ex rel. Portage Lakes* at ¶ 37. The Supreme Court has held, therefore, "after construing R.C. 4117.12(B) in accordance with rules of grammar and common usage," SERB must issue a complaint and conduct a hearing on a ULP charge if, after an investigation, it has a "reasonable ground to believe that an unfair labor practice has occurred." *Id.* at ¶ 38.

{¶ 24} The Supreme Court has also observed that SERB's investigative role "in this early stage of the proceeding is most closely analogous to that of a public prosecutor investigating a citizen's complaint of criminal activity," and "[i]n either case, the decision not to prosecute is discretionary, and not generally subject to judicial review." *Ohio Assn. of Pub. School Emps., Chapter 643*, 59 Ohio St.3d at 160. Further, "[b]ecause mandamus proceedings are premised upon the relators' establishing an abuse of discretion by SERB in its probable-cause determination, courts should not substitute their judgment for that of the administrative agency, i.e., SERB." *State ex rel. Portage Lakes*, 2002-Ohio-2839, at ¶ 41.

{¶ 25} As noted, in seeking a writ of mandamus, appellant argued before the trial court that the district retaliated against him for filing his April 2018 grievance (regarding the part-time seventh grade position) by (1) declining to hire him for a full-time eighth grade position that became available in the summer of 2018 during the pendency of the arbitration proceeding; (2) making requests that he meet with other teachers; and (3) conducting classroom observations (by the principal and assistant principal). Appellant alleged that such retaliation constituted a violation of R.C. 4117.11(A)(3).

{¶ 26} R.C. 4117.11(A)(3) provides in part: "It is an unfair labor practice for a public employer, its agents, or representatives to . . . [d]iscriminate in regard to hire or tenure of employment or any term or condition of employment on the basis of the exercise of rights

guaranteed by Chapter 4117. of the Revised Code." The Supreme Court has held that "[t]he motivation behind an employer's decision to take an action regarding an employee is the central question that must be resolved in a ULP case." *State Emp. Relations Bd. v. Adena Local School Dist. Bd. of Edn.*, 66 Ohio St.3d 485, 494 (1993).

{¶ 27} In general, SERB requires a complainant to establish the following elements to make a prima facie case of discrimination under R.C. 4117.11(A)(3): "(1) that the employee at issue is a public employee and was employed at relevant times by the Respondent; (2) that he or she engaged in protected activity under Chapter 4117, which fact was either known to the Respondent or suspected by the Respondent; and (3) that the Respondent took adverse action against the employee under circumstances that, if left unrebutted by other evidence, could lead to a reasonable inference that the Respondent's actions were related to the employee's engaging in protected activity under Chapter 4117." *In re State Emp. Relations Bd. v. Wellington Exempted Village School Dist. Bd. of Edn.*, SERB No. 2021-003, 2021 OH SERB LEXIS 4, *8-9 (Oct. 7, 2021).

{¶ 28} Similarly, in order to establish a case of retaliation, a claimant is required to "prove that (1) she engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and adverse action." *Greer-Burger v. Temesi*, 2007-Ohio-6442, ¶ 13, citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).

{¶ 29} Appellant first contends SERB and the trial court erred in viewing the evidence he submitted through the lens of the CBA rather than R.C. Chapter 4117. Appellant cites language from the trial court's decision that "the District was under no obligation to inform the committee of [appellant's] interest in the [eighth grade] position since the position arose during summer vacation." (Apr. 23, 2024 Decision at 15.) According to appellant, "[t]he word 'obligation' peppers the written decisions of both SERB and the trial court," which appellant construes as an improper focus on "contractual obligation." (Appellant's Brief at 15.)

{¶ 30} Appellant's assertion that SERB and the trial court erred in improperly focusing on the district's contractual obligation, rather than the provisions of R.C. Chapter 4117, is not supported by the record. As noted under the facts, in *Thelen*, the First District

held that SERB, following its initial investigation (in 2019), improperly relied on the arbitration decision as the basis for dismissing the retaliation claim. *See Thelen*, 2022-Ohio-2883, at ¶ 20 (1st Dist.) (noting that, "[r]eading SERB's decision as a whole, it is apparent that SERB denied Thelen's ULP charge because it found that the matter had been determined at arbitration").

{¶ 31} Upon remand, however, both SERB and the trial court recognized the dispositive issue to be whether there was probable cause to believe a ULP occurred, i.e., whether the district retaliated against appellant because he engaged in protected activity, including the issue whether there existed a causal connection between appellant's filing of the grievance (related to the part-time seventh grade position) and the district's decision not to hire him for the full-time eighth grade position. While the trial court's observation that the district had no obligation to award appellant an eighth grade position that arose during the summer break was a fact not disputed by the parties, the record does not suggest SERB's dismissal of the ULP charge was predicated on a finding there was no contractual obligation to hire him for that position. Rather, and as noted by the trial court, SERB dismissed the charge based on its determination appellant "did not establish a prima facie case of discrimination under R.C. 4117.11(A)(3) because he 'did not provide sufficient information or documentation to show a nexus that he was harmed and/or that the reasons he did not receive the part-time 7th or 8th grade positions were based on anti-union animus.' " (Decision at 11, quoting Feb. 3, 2023 Investigator's Memo at 9.)

{¶ 32} Appellant further contends both SERB and the trial court erred by "hiding" what they believed to be the true reason for the district to deny him the eighth grade position. (Appellant's Brief at 17.) Again, however, the record does not support such an assertion.

{¶ 33} As set forth under the facts, following the remand by the First District, a SERB labor relations specialist (hereafter "investigator") conducted a new investigation and issued an Investigator's Memorandum ("I.M."), dated February 3, 2023. The investigator's "findings upon investigation," as outlined in the I.M., include the following. During the 2017-2018 school year, appellant, while "a full-time teacher" at Dater High School ("Dater"), applied (in February 2018) for a part-time seventh grade position at Walnut Hills and was interviewed by a "committee of his peers," including Assistant Principal Stewart.

(I.M. at 3.)  The district maintained appellant "was not the first or second choice for the position," and the investigator concluded appellant failed to provide sufficient information to support allegations that Stewart encouraged the committee to adopt a subjective standard.  (I.M at 3.)  On April 8, 2018, appellant filed a grievance "regarding not being awarded the transfer to the [seventh grade] position," and he "informed a Walnut Hills teacher that he intended to 'pursue his union rights to their fullest extent.' "  (I.M. at 3.)

{¶ 34} Appellant's grievance "was held in abeyance until August 23, 2018 due to summer break," during which time a full-time eighth grade position became available.  (I.M. at 4.)  Because "the internal rounds process had 'long since expired,' " appellant "requested a summer 'administrative transfer' into the open position."  (I.M. at 4.)  On August 10, 2018, the district filled the eighth grade position "with a third-year teacher."  (I.M. at 4.)  Appellant "confirm[ed] that AP Stewart was 'under no contractual obligation to grant a summer administrative transfer request.' "  (I.M. at 4.)  The investigator found appellant failed to provide sufficient information or documentation to support allegations that he "spoke with members of the interview committee and learned that the committee had never met to discuss the 8th grade position, had not interviewed anyone for the position," and had never been informed of appellant's "administrative transfer request or upgraded resume."  (I.M. at 4.)

{¶ 35} On August 27, 2018, the arbitrator awarded appellant a part-time seventh grade position at Walnut Hills, and appellant left his full-time position at Dater and accepted the part-time position at Walnut Hills.  Appellant subsequently sought to bring his part-time position up to a full-time course load, but the district refused to assign him to two study hall periods.  Appellant alleged " 'the manner in which he had been denied two sections of Study Hall gave [him] reason to believe that [AP] Stewart was retaliating against him due to his prior Union activity,' " and he further contended "this, in turn, 'caused him to reexamine earlier events from the perspective of retaliation.' " (I.M. at 7.)  Appellant also alleged as retaliation the fact the assistant principal and principal had conducted classroom observations of him for several minutes on successive days in September 2018.

{¶ 36} The investigator found "no causal connection" to show appellant was not offered the eighth grade position due to his grievance, and further found appellant's

"allegations that AP Stewart's emails and classroom observation were based on anti-union animus are not supported by the facts." (I.M. at 9.)

{¶ 37} In its subsequent dismissal order, SERB agreed with the investigator's finding "[t]here is no causal connection to show that [appellant] was not offered the eighth grade position due to his grievance." (SERB Dismissal Order at 1.) SERB also found appellant failed to show alleged retaliation based on classroom observations by the principal and assistant principal, agreeing with the district's observation that it would be unrealistic for appellant to believe the assistant principal "would have no contact with him while at Walnut Hills." (SERB Dismissal Order at 2.) SERB concluded appellant "failed to show that the District took an adverse action against him, as it complied with the Arbitrator's award and more recently offered [appellant] a full-time teaching position" that appellant accepted, two days prior to his filing of the complaint for mandamus with the trial court. (SERB Dismissal Order at 1.)

{¶ 38} The trial court, in reviewing SERB's determination, found SERB did not abuse its discretion in recommending and/or dismissing appellant's ULP charge as not supported by probable cause. The court therefore concluded appellant was not entitled to a writ of mandamus, finding appellant had no legal right to the relief requested, and that SERB was under no duty to perform any further investigation of appellant's ULP charge or to hold a hearing on that charge.

{¶ 39} Based on this court's review, we agree with the trial court that SERB did not abuse its discretion in its probable cause determination and in dismissing the ULP charge. While appellant disputes the reasons proffered by the district during the investigation, it is apparent SERB found those reasons credible. Under Ohio law, in making its probable-cause determination, " 'SERB will consider not only the evidence that supports the allegations of the charge but also, of course, any information that may rebut the charge or offer a defense to the violation alleged,' " and " '[i]ssues such as managerial justification, the absence of protected activity by a charging party, or the failure to show any indication of unlawful motivation may be sufficient to secure dismissal of a case even when the facts alleged in the charge have been verified.' " *State ex rel. Portage Lakes*, 2002-Ohio-2839, at ¶ 40, quoting Drucker, Collective Bargaining in Ohio 670, Section 14.20(B) (1995).

{¶ 40} As set forth above, with respect to findings relating to the district's selection of the candidate for the eighth grade position, the investigator noted the position at issue became available during the 2018 summer break when "the internal rounds process 'had long since expired.' " (I.M. at 4.) As also noted, the parties did not dispute the district was under no obligation to re-open the internal rounds process at that time (and during which appellant's grievance was "held in abeyance until August 23, 2018 due to summer break"). (I.M. at 4.) The record indicates the candidate ultimately selected for the eighth grade position, Jessica Handshoe, had also interviewed for the seventh grade teaching position that was the subject of appellant's grievance and arbitration; according to the district, Handshoe was the second highest-ranked candidate from the external rounds for that earlier position (behind Elizabeth Moore, the candidate hired for the seventh grade position). According to witness statements submitted by appellant on reconsideration, at least two members of the interview committee, Samantha Bramlage and Kathy Nolan, agreed to the district's recommendation to hire Handshoe based on the fact she had scored second in the external rounds. As found by the trial court, "neither statement supports [appellant's] anti-union allegations." (Apr. 23, 2024 Decision at 15.)

{¶ 41} In addition to finding appellant failed to provide sufficient information to show a nexus between the filing of his grievance and the district's hiring decision for the eighth grade position, SERB also found the record failed to show appellant suffered an adverse employment action. As to this issue, while the record indicates appellant apparently viewed a teaching position at Walnut Hills as more desirable than a position at Dater (as evidenced by the fact he was willing to leave a full-time position at Dater to accept a part-time position at Walnut Hills following the arbitration), courts have generally held "[a]n employee's subjective belief that one position is more desirable is irrelevant to whether the transfer is an adverse employment action." *Lookabaugh v. Spears*, 2008-Ohio-1610, ¶ 17 (2d Dist.), citing *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002); *Tessmer v. Nationwide Life Ins. Co.*, 1999 Ohio App. LEXIS 4633 (10th Dist. Sept. 30, 1999).

{¶ 42} Further, an adverse employment action in general involves " 'a materially adverse change in the terms and conditions of the plaintiff's employment,' " including factors such as "a decrease in salary, . . . a material loss of benefits, significantly diminished

material responsibilities or other indices unique to a particular situation." (Citations omitted.) *Dautartas v. Abbott Laboratories*, 2012-Ohio-1709, ¶ 52 (10th Dist.) *See also Sturgeon v. S. Ohio Med. Ctr.*, 2011 U.S. Dist. LEXIS 135469 (S.D.Ohio Nov. 23, 2011) ("the denial of a lateral transfer is not an adverse employment action unless it results in a material change of salary, benefits, responsibilities, or prestige"). As noted by SERB, at the time of appellant's non-selection for the eighth grade position at Walnut Hills (i.e., in the summer of 2018), he already held a full-time position at Dater, and the record does not indicate appellant suffered a reduction in pay or benefits at the time he was denied the position. SERB's dismissal order also cited the fact the district subsequently awarded appellant a full-time teaching position at Walnut Hills at the start of the 2019 school year.

{¶ 43} Appellant also alleged the district retaliated against him based on classroom observations by the principal and assistant principal (Stewart). Nothing in the administrative record, however, suggests that such observations, apparently lasting several minutes on successive days in September 2018, resulted in any "adverse consequences" or discipline to appellant. *See Creggett v. Jefferson Cty. Bd. of Edn.*, 491 Fed.Appx. 561, 568 (6th Cir. 2012) ("A brief, informal classroom observation by one entitled to observe, that results in no adverse consequences or penalties, is hardly an adverse employment action."). Similarly, the record fails to suggest appellant suffered any harm as a result of the district's request for appellant to meet with members of the social studies team at the time he began his new duties at Walnut Hills. In this respect, " '[n]ot everything that makes an employee unhappy or resentful is an actionable adverse action.' " *Dautartas* at ¶ 52, quoting *Canady v. Rekau & Rekau, Inc.*, 2009-Ohio-4974, ¶ 25 (10th Dist.), citing *Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999).

{¶ 44} Appellant's contention that SERB and the trial court abused their discretion by "quoting but not discussing" the contents of his witness affidavits is without merit. Appellant argued before the trial court that the SERB investigator "abused her discretion by omitting mention of [his witness] affidavits from her 'Discussion of Findings' and 'Recommendation to the Board.' " (Oct. 4, 2023 Appellant's Trial Brief at 5.) Appellant further argued the investigator "abused her discretion by omitting mention of [a] text message from her 'Discussion of Findings' and 'Recommendation to the Board.' " (Appellant's Trial Brief at 6.)

{¶ 45} The trial court, in addressing appellant's assertions, noted that the SERB investigator discussed the text message, as well as the affidavits, "in the section of her Memorandum entitled 'Findings Upon Investigation.' " (Decision at 14.) The court concluded that "the fact" the SERB investigator discussed the text message and the affidavits "in the section of her Memorandum entitled 'Findings Upon Investigation', and not under the sections entitled 'Discussion' and 'Recommendation', does not imply or indicate that such information was not considered by SERB or that SERB in some way abused its discretion by not discussing the findings regarding the text message in a certain section of its recommendation or finding." (Decision at 14.) We agree, and find no error with that determination, as the affidavits and text message referenced by appellant were discussed extensively by the investigator in the I.M.

{¶ 46} Appellant's final contention is that SERB and the trial court abused their discretion by failing to conduct a "reasonable examination" of the points of error he cited in his motion for reconsideration. (Appellant's Brief at 21.) Appellant maintains he "pointed out" in his motion "over 20 examples of obvious error contained in the Investigator's Report." (Appellant's Brief at 22.)

{¶ 47} Appellant's challenge to the review by SERB and the trial court of his motion is premised primarily on his earlier contention that SERB and the trial court erred in improperly focusing on the CBA as opposed to R.C. Chapter 4117. Specifically, appellant argues the trial court "deferred to SERB's claim that it had reviewed the Motion for Reconsideration . . . likely because the information and arguments contained within the Motion for Reconsideration were not intended to show that a violation of the CBA had occurred." (Appellant's Brief at 22-23.) According to appellant, "there was no need for the trial court to review the points of error when it was already aware that none of the points addressed a question of contract." (Appellant's Brief at 23.) As previously addressed, however, the record does not support appellant's claim that SERB based its dismissal of the ULP charge on a finding there was no contractual obligation to hire him.

{¶ 48} Further, appellant's assertion that SERB and the trial court failed to conduct a reasonable examination of his motion is not persuasive. As outlined under the facts, on March 1, 2023, appellant filed with SERB a pro se motion for reconsideration, raising numerous "points" of disagreement with the findings of the investigator. On March 24,

2023, the investigator who conducted the remand investigation issued a reconsideration memorandum. The investigator noted appellant's motion for reconsideration "provides thirty-three (33) 'points' containing his 'interpretation' of how the new SERB investigation should have been conducted," and "also provides his 'clarification' as to how the interview process should have been conducted by the District." (Investigator's Recons. Memo at 2.) The investigator found appellant's " 'clarifications' do not mention and do not support his anti-union animus allegations," and that appellant's " 'points' have been previously addressed in the Investigator's Report." (Investigator's Recons. Memo at 2.)

{¶ 49} The investigator also noted appellant "did provide one (1) new witness statement, dated March 3, 2023, from Samantha Bramlage . . . who was a member of the interview committee" for the eighth grade position during the summer of 2018. (Investigator's Recons. Memo at 2.) The investigator cited statements by Bramlage that she did " 'not recall discussing [Mr.] Thelen or the grievance,' " and that she had recommended offering the position to the candidate who scored second in the external rounds "because this candidate seemed logically 'next in line' and because the internal . . . rounds had officially concluded." (Investigator's Recons. Memo at 2-3.) The investigator found "[t]he information contained in Ms. Bramlage's statement does not support Mr. Thelen's allegation of anti-union animus." (Investigator's Recons. Memo at 2.) The investigator recommended that SERB deny the motion for reconsideration.

{¶ 50} On April 13, 2023, SERB issued an order denying appellant's motion for reconsideration. In that order, SERB concluded, "after reconsidering the information and arguments provided by [appellant] in [the] Motion for Reconsideration, the information and arguments are not sufficient to warrant a change of the Board's previous decision." (SERB Order at 2.)

{¶ 51} The trial court, noting in part that SERB stated it "considered *all information and arguments* provided in [appellant's] Motion for Reconsideration, as well as all the information previously submitted by both parties in the original 2019 investigation, along with the previous Court decisions," found no abuse of discretion by SERB in denying the motion for reconsideration. (Emphasis in original.) (Decision at 16.)

{¶ 52} We note, to the extent appellant relied on purported "new" information submitted with his motion for reconsideration, there is nothing in the motion to indicate

why this information, including witness statements, could not have been submitted at the time of the investigation.  Further, we find no error by the trial court in concluding SERB properly considered the arguments and information submitted by appellant in his reconsideration motion,  and that such arguments and materials did not warrant reversal of its prior dismissal of the ULP charge.

{¶ 53} Based upon this court's review, we agree with the trial court that SERB did not abuse its discretion in dismissing appellant's ULP charge for lack of probable cause. Accordingly, the trial court did not err in denying appellant's petition for a writ of mandamus on grounds he has not shown a clear legal right to the relief requested. Appellant's single assignment of error is not well-taken and is overruled.

## IV. Conclusion

{¶ 54} Based on the foregoing, and having overruled appellant's single assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BEATTY BLUNT and BOGGS, JJ., concur.

———————————